# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA**

**v.**

**SEALED**
**INDICTMENT**



**BRIAN BRAINARD WEDGEWORTH**
  a/k/a "DR. BRIAN ANDERSON"
  a/k/a "DR. ANTHONY WATKINS"
  a/k/a "DR. BRIAN ADAMS"
  a/k/a "DR. EDWARD CHEN"
  a/k/a "DR. BRIAN CHRIS"
  a/k/a "DR. CHRIS WILLIAMSON"
  a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON"
  a/k/a "DR. BRIAN EDMONDS"
  a/k/a "DR. BRIAN AMMERSON"
  a/k/a "DR. BRIAN LAMAR WILSON"
  a/k/a "DR. BRIAN WILSON"
  a/k/a "DR. BRIAN MIMS"
  a/k/a "DR. BRIAN LAMAR SIMS"

_____/

## THE GRAND JURY CHARGES:

### COUNTS ONE THROUGH FOURTEEN

### A. INTRODUCTION

At all times material to this Indictment:

Online Dating Services, Social Media Platforms, and Email Providers

1.     Plenty of Fish (also known as POF) was an online dating service,


RCVD USDC FLND GV
OCT 26 '21 PM 3:54

headquartered in Canada, that operated the website POF.com, which offered its services worldwide.

2.  Match was an online dating service, headquartered in Dallas, Texas, that operated the website Match.com, which offered its services worldwide.

3.  Elite Singles was an online dating service operated by Spark Network Services GmbH, headquartered in Germany.

4.  LinkedIn was a business and employment-oriented online service, headquartered in Sunnyvale, California, that operated via websites and mobile apps. LinkedIn was mainly used for professional networking and allowed job seekers to post their resumés and employers to post jobs.

5.  Christian Mingle was an online dating service that catered to Christian singles. Christian Mingle was operated by Spark Network Services GmbH, headquartered in Germany.

6.  CoffeeMeetsBagel was dating and social networking service headquartered in San Francisco, California.

7.  Hinge was dating and social networking service headquartered in New York, New York.

8.  The League was social and dating mobile application headquartered in San Francisco, California.

9. Bumble was dating and social networking service headquartered in Austin, Texas.

10. Gmail was a free email service provided by Google, which was headquartered in Mountain View, California.

11. To offer its services and to connect its users with one another, Plenty of Fish, Match, LinkedIn, Christian Mingle, CoffeeMeetsBagel, Hinge, Bumble, The League, and Google utilized computer servers which were located outside of the state of Florida.

## Financial Institutions and Companies

12. Wells Fargo Bank, N.A. ("Wells Fargo") was a financial institution that was headquartered in San Francisco, California.

13. Regions Bank ("Regions") was a financial institution that was headquartered in Birmingham, Alabama.

14. TD Bank, N.A. ("TD Bank") was a financial institution that was headquartered in Cherry Hill, New Jersey.

15. PNC Bank ("PNC") was a financial institution that was headquartered in Pittsburgh, Pennsylvania.

16. BBVA Compass Bank ("BBVA") was a financial institution that was headquartered in Birmingham, Alabama.

3

17.   Bank of America, N.A. ("BOA") was a financial institution that was headquartered in Charlotte, North Carolina.

18.   J.P. Morgan Chase Bank, N.A. ("Chase") was a financial institution that was headquartered in New York, New York.

19.   Fifth Third Bank was a financial institution that was headquartered in Cincinnati, Ohio.

20.   American Express ("AMEX") was a financial company, headquartered in New York, New York, that offered credit cards to its customers.

21.   Wells Fargo, Regions, TD Bank, PNC, BBVA, Chase, Fifth Third Bank, and AMEX used computer servers located outside of the state of Florida to process financial and credit card transactions.

## B.  THE CHARGE

Between in or about October 2016, and in or about March 2021, in the Northern District of Florida and elsewhere, the defendant,

**BRIAN BRAINARD WEDGEWORTH,**
**a/k/a "DR. BRIAN ANDERSON,"**
**a/k/a "DR. ANTHONY WATKINS,"**
**a/k/a "DR. BRIAN ADAMS,"**
**a/k/a "DR. EDWARD CHEN,"**
**a/k/a "DR. BRIAN CHRIS,"**
**a/k/a "DR. CHRIS WILLIAMSON,"**
**a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON,"**
**a/k/a "DR. BRIAN EDMONDS,"**
**a/k/a "DR. BRIAN AMMERSON,"**
**a/k/a "DR. BRIAN LAMAR WILSON,"**

**a/k/a "DR. BRIAN WILSON,"**
**a/k/a "DR. BRIAN MIMS,"**
**a/k/a "DR. BRIAN LAMAR SIMS,"**

did knowingly and willfully devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, did cause a wire communication to be transmitted in interstate commerce.

## C. THE FRAUDULENT SCHEME

It was part of the scheme to defraud that:

1.    **BRIAN BRAINARD WEDGEWORTH** used numerous aliases, including "Dr. Brian Anderson," "Dr. Anthony Watkins," "Dr. Brian Adams," "Dr. Brian Chris," "Dr. Chris Williamson," "Dr. Brian Christopher Williamson," "Dr. Brian Edmonds," "Dr. Brian Ammerson," "Dr. Brian Lamar Wilson," "Dr. Brian Wilson," "Dr. Brian Mims," and "Dr. Brian Lamar Sims," along with photographs of himself, some of which depicted him dressed as a physician, on online dating websites and social media platforms to hide his true identity and to falsely portray himself as a medical doctor. At times, **BRIAN BRAINARD WEDGEWORTH** fraudulently portrayed himself as a medical doctor and as "Brian Anderson, M.D., F.A.C.S." when he met women in person and by using a business card reflecting "Brian Anderson, M.D., F.A.C.S.," such as when he would visit a local luxury car dealership for vehicle maintenance.

5

2.     **BRIAN BRAINARD WEDGEWORTH** opened accounts at financial institutions, including Wells Fargo and Chase, using the name and personal identification information of W.W. For example, an account at Chase was opened in the name of "W. Brian Wedgeworth" using the social security number, date of birth, and driver's license number of W.W. **BRIAN BRAINARD WEDGEWORTH** used such accounts to pay for the online dating websites and social media platforms that he used.

3.     **BRIAN BRAINARD WEDGEWORTH** used online dating websites, social media platforms, email, text messaging, telephone, and messaging applications, including but not limited to Plenty of Fish, Match, LinkedIn, Christian Mingle, CoffeeMeetsBagel, Hinge, Bumble, The League, and Google, while using his various aliases, to meet women throughout the United States, in order to develop romantic relationships with them and to gain their trust. Through these services, **BRIAN BRAINARD WEDGEWORTH** was able to establish relationships with at least 21 individuals in Florida, California, Texas, Louisiana, Georgia, Alabama, Tennessee, and Maryland.

4.     In doing so, **BRIAN BRAINARD WEDGEWORTH** falsely represented that he was a physician and a surgeon and that he attended prestigious universities and hospitals, knowing that none of it was true. For example, **BRIAN BRAINARD WEDGEWORTH** falsely claimed to have attended or been

6

affiliated with the University of Pennsylvania, Duke University, Johns Hopkins University, Harvard Medical School, Weill Cornell Medical College, Cedars-Sinai Medical Center, a hospital affiliated with Vanderbilt University, and New York Presbyterian Hospital. Further, **BRIAN BRAINARD WEDGEWORTH** falsely told the women that he was a member of the Kappa Alpha Psi, as many of the women were current or former members of sororities that would have been familiar with Kappa Alpha Psi.

5.     **BRIAN BRAINARD WEDGEWORTH** told the women that he met that he did not want them to have debt, and that he would help them financially by paying their loans and other debts. As a result, the women gave **BRIAN BRAINARD WEDGEWORTH** their banking and loan information, including account numbers, logins, and passwords, and their personal identification information, including their full name, date of birth, and social security number. **BRIAN BRAINARD WEDGEWORTH** then sent electronic payments to the women's credit card companies, mortgage lenders, student loans servicers, and other creditors. These electronic payments were made using bank accounts that had insufficient funds and were previously closed. By making these electronic payments, **BRIAN BRAINARD WEDGEWORTH** caused the women to receive notification from their lenders and creditors that payments were made on their

debts and that their debts were paid in full, when in fact they had not been paid in full.

6.      Before the payments were supposed to clear and post to the women's debts, **BRIAN BRAINARD WEDGEWORTH** falsely and fraudulently told to the women stories to induce them to send him money. These false stories included that he did not have the funds necessary to pay the expenses for his (fictitious) medical practice because he had paid the women's debts, and that his bank accounts were frozen due to a medical malpractice lawsuit. **BRIAN BRAINARD WEDGEWORTH** then convinced the women to:

a.      withdraw cash from their bank accounts to give to him and to deposit into bank accounts in the name of "Brian Wedgeworth" (who he said was his business partner), "W. Brian Wedgeworth," and K.H. (who he said was his assistant and his business partner);

b.      write checks payable to "Brian Wedgeworth" and to deposit the checks into bank accounts in the name of "Brian Wedgeworth," "W. Brian Wedgeworth," and K.H.; and

c.      wire money to "Brian Wedgeworth" and to K.H.

If the women did not have sufficient funds in their bank accounts, **BRIAN BRAINARD WEDGEWORTH** convinced the women to obtain loans, the funds of which they were told to give to him and to deposit into accounts in the name of

"Brian Wedgeworth" and of K.H. Also, **BRIAN BRAINARD WEDGEWORTH** convinced the women to buy him jewelry and watches, including Rolex watches, based on BRIAN BRAINARD WEDGEWORTH'S false promise that he would repay them. On occasion, **BRIAN BRAINARD WEDGEWORTH** directed the women to ship the watches to him.

7.     Using the banking information and personal identification information provided to him by the women, **BRIAN BRAINARD WEDGEWORTH** fraudulently added himself as an authorized user and cardholder, increased the women's credit limits, obtained lines of credit, and obtained cash advances on the women's credit and debit card accounts.

8.     **BRIAN BRAINARD WEDGEWORTH** made fraudulent purchases, including Rolex watches and tickets to sporting events, using the credit and debit cards and account information that he fraudulently obtained.

9.     **BRIAN BRAINARD WEDGEWORTH** sold the Rolex watches that he fraudulently obtained from the women and by fraudulently using the women's credit and debit card accounts to jewelers and watch stores. **BRIAN BRAINARD WEDGEWORTH** directed the jewelers and watch stores to pay him the proceeds of the watch sales in cash and by check, and to wire the proceeds of the watch sales into accounts in the names of "Brian Wedgeworth" and "W. Brian Wedgeworth."

10. **BRIAN BRAINARD WEDGEWORTH** also made false and fraudulent statements to avoid detection of his scheme when confronted about false statements he had made. For example, one woman later discovered that he was using a false name and was a convicted felon who had been previously incarcerated in the state of Georgia and who had been referred in various media reports as "the Casanova Scammer" because of his alleged engagement in a romance scam by which he defrauded women around the country. When confronted with this information, **BRIAN BRAINARD WEDGEWORTH** falsely told her that he worked for the federal government in an undercover capacity and that he needed to become incarcerated in order to catch correctional officers who were committing criminal acts. Further, **BRIAN BRAINARD WEDGEWORTH** falsely told the woman that the media reports about him being the "Casanova Scammer" were part of his cover story. Additionally, **BRIAN BRAINARD WEDGEWORTH** falsely told her that as part of his cover story, he could not practice medicine and that once he finished his undercover work, he would be able to get a medical license issued in his new name so he could resume practicing as a physician.

11. By this conduct, the defendant, **BRIAN BRAINARD WEDGEWORTH** fraudulently obtained more than $750,000 in funds and property to which he was not entitled.

10

## D. EXECUTION OF THE SCHEME

On or about the following dates, for the purpose of executing and attempting

to execute the scheme to defraud, the defendant,

**BRIAN BRAINARD WEDGEWORTH,**
**a/k/a "DR. BRIAN ANDERSON,"**
**a/k/a "DR. ANTHONY WATKINS,"**
**a/k/a "DR. BRIAN ADAMS,"**
**a/k/a "DR. EDWARD CHEN,"**
**a/k/a "DR. BRIAN CHRIS,"**
**a/k/a "DR. CHRIS WILLIAMSON,"**
**a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON,"**
**a/k/a "DR. BRIAN EDMONDS,"**
**a/k/a "DR. BRIAN AMMERSON,"**
**a/k/a "DR. BRIAN LAMAR WILSON,"**
**a/k/a "DR. BRIAN WILSON,"**
**a/k/a "DR. BRIAN MIMS,"**
**a/k/a "DR. BRIAN LAMAR SIMS,"**

did knowingly cause wire communications to be transmitted in interstate

commerce, as set forth below:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| One | December 7, 2016 | $9,500 Rolex watch purchase transaction at The Gem Collection in Tallahassee, Florida using K.H.'s Wells Fargo credit card account ending in 3900 |
| Two | January 6, 2017 | $30,000 wire transfer from USAA account of R.E.M. into BOA account ending in 7274 of K.H. |
| Three | April 23, 2017 | Email from A.P. containing A.P.'s financial account login information |

| | | |
|---|---|---|
| Four | August 9, 2017 | $14,279 Rolex watch purchase transaction at The Gem Collection in Tallahassee, Florida using L.A.'s American Express credit card account ending in 6-51009 |
| Five | October 12, 2017 | Text message to S.P. with account number and accountholder names regarding BOA account ending in 2343 |
| Six | January 12, 2018 | Email from **BRIAN BRAINARD WEDGEWORTH** to A.A. |
| Seven | May 4, 2018 | Wire transfer from C.D.'s PNC Bank account to the BBVA account of **BRIAN BRAINARD WEDGEWORTH** |
| Eight | May 18, 2018 | Deposit into BBVA account of **BRIAN BRAINARD WEDGEWORTH** by L.H. |
| Nine | May 28, 2018 | Deposit into BBVA account of **BRIAN BRAINARD WEDGEWORTH** by H.R.C. |
| Ten | April 10, 2019 | Text message from E.T. containing E.T.'s financial account login information to **BRIAN BRAINARD WEDGEWORTH** |
| Eleven | July 1, 2019 | Text message from **BRIAN BRAINARD WEDGEWORTH** to M.R. |
| Twelve | July 25, 2019 | Text message from **BRIAN BRAINARD WEDGEWORTH** to J.S. |
| Thirteen | August 17, 2019 | Text message from **BRIAN BRAINARD WEDGEWORTH** to E.C. |
| Fourteen | August 17, 2019 | Text message from **BRIAN BRAINARD WEDGEWORTH** to S.D. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS FIFTEEN THROUGH TWENTY-TWO

## A.  INTRODUCTION

The allegations of Section A of Count One are hereby realleged and

incorporated by reference as if fully set forth herein.

## B. THE CHARGE

Between in or about October 2016, and in or about March 2021, in the

Northern District of Florida and elsewhere, the defendant,

**BRIAN BRAINARD WEDGEWORTH,**
**a/k/a "DR. BRIAN ANDERSON,"**
**a/k/a "DR. ANTHONY WATKINS,"**
**a/k/a "DR. BRIAN ADAMS,"**
**a/k/a "DR. EDWARD CHEN,"**
**a/k/a "DR. BRIAN CHRIS,"**
**a/k/a "DR. CHRIS WILLIAMSON,"**
**a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON,"**
**a/k/a "DR. BRIAN EDMONDS,"**
**a/k/a "DR. BRIAN AMMERSON,"**
**a/k/a "DR. BRIAN LAMAR WILSON,"**
**a/k/a "DR. BRIAN WILSON,"**
**a/k/a "DR. BRIAN MIMS,"**
**a/k/a "DR. BRIAN LAMAR SIMS,"**

did knowingly and willfully devise, and intend to devise, a scheme to defraud and

for obtaining money and property by means of material false and fraudulent

pretenses, representations, and promises, and for the purpose of executing such

scheme, did cause a matter to be sent and delivered by a private and commercial

interstate carrier.

## C. THE FRAUDULENT SCHEME

The allegations of Section C of Count One are hereby realleged and

incorporated by reference as if fully set forth herein.

## D. MAILINGS

On or about the following dates, for the purpose of executing and attempting

to execute the scheme to defraud, the defendant,

**BRIAN BRAINARD WEDGEWORTH,**
**a/k/a "DR. BRIAN ANDERSON,"**
**a/k/a "DR. ANTHONY WATKINS,"**
**a/k/a "DR. BRIAN ADAMS,"**
**a/k/a "DR. EDWARD CHEN,"**
**a/k/a "DR. BRIAN CHRIS,"**
**a/k/a "DR. CHRIS WILLIAMSON,"**
**a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON,"**
**a/k/a "DR. BRIAN EDMONDS,"**
**a/k/a "DR. BRIAN AMMERSON,"**
**a/k/a "DR. BRIAN LAMAR WILSON,"**
**a/k/a "DR. BRIAN WILSON,"**
**a/k/a "DR. BRIAN MIMS,"**
**a/k/a "DR. BRIAN LAMAR SIMS,"**

did knowingly cause a matter to be sent and delivered by a private and commercial

interstate carrier as set forth below:

| COUNT | SENDING DATE | MATTER SENT |
|-------|-------------|-------------|
| Fifteen | On or between July 28, 2017, and August 1, 2017 | Rolex Cellini watch |
| Sixteen | On or between August 5, 2017, and August 9, 2017 | American Express credit card |
| Seventeen | On or between December 9, 2017, and January 1, 2018 | 2018 Sugar Bowl - College Football Playoff Semifinal (Clemson vs. Alabama) game tickets |
| Eighteen | On or between May 22, 2018, and May 24, 2018 | Rolex Daytona watch |
| Nineteen | On or between May 28, 2018, and May 30, 2018 | Rolex Submariner watch |

| Twenty | On or between December 28, 2018, and January 9, 2019 | Rolex Submariner watch |
|---|---|---|
| Twenty-One | On or between February 19, 2019, and February 22, 2019 | 18K yellow gold Rolex watch |
| Twenty-Two | On or between April 14, 2019, and April 16, 2019 | Rolex Yacht Master watch |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TWENTY-THREE

### A. INTRODUCTION

The allegations of Sections A and C of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

Between on or about May 14, 2018, and on or about August 27, 2019, in the Northern District of Florida, the defendant,

**BRIAN BRAINARD WEDGEWORTH,**
**a/k/a "DR. BRIAN ANDERSON,"**
**a/k/a "DR. ANTHONY WATKINS,"**
**a/k/a "DR. BRIAN ADAMS,"**
**a/k/a "DR. EDWARD CHEN,"**
**a/k/a "DR. BRIAN CHRIS,"**
**a/k/a "DR. CHRIS WILLIAMSON,"**
**a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON,"**
**a/k/a "DR. BRIAN EDMONDS,"**
**a/k/a "DR. BRIAN AMMERSON,"**
**a/k/a "DR. BRIAN LAMAR WILSON,"**
**a/k/a "DR. BRIAN WILSON,"**
**a/k/a "DR. BRIAN MIMS,"**
**a/k/a "DR. BRIAN LAMAR SIMS,"**

did knowingly possess and use, without lawful authority, a means of identification of another person, to wit: the name, social security number, date of birth, and Alabama driver's license number of W.W., during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit: wire fraud as charged in Counts One through Fourteen of this Indictment, and mail fraud as charged in Counts Fifteen through Twenty-Two of this Indictment.

In violation of Title 18, United States Code, Section 1028A(a)(1) and 2.

## COUNTS TWENTY-FOUR THROUGH TWENTY-FIVE

### A. INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

Between in or about October 2016, and in or about March 2021, in the Northern District of Florida and elsewhere, the defendant,

**BRIAN BRAINARD WEDGEWORTH,**
**a/k/a "DR. BRIAN ANDERSON,"**
**a/k/a "DR. ANTHONY WATKINS,"**
**a/k/a "DR. BRIAN ADAMS,"**
**a/k/a "DR. EDWARD CHEN,"**
**a/k/a "DR. BRIAN CHRIS,"**
**a/k/a "DR. CHRIS WILLIAMSON,"**
**a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON,"**
**a/k/a "DR. BRIAN EDMONDS,"**
**a/k/a "DR. BRIAN AMMERSON,"**
**a/k/a "DR. BRIAN LAMAR WILSON,"**

**a/k/a "DR. BRIAN WILSON,"**
**a/k/a "DR. BRIAN MIMS,"**
**a/k/a "DR. BRIAN LAMAR SIMS,"**

did knowingly engage and attempt to engage in a monetary transaction by,

through, and to a financial institution, affecting interstate commerce, in criminally

derived property of a value greater than $10,000, namely, the withdrawal, deposit,

and transfer of funds and monetary instruments, as identified below, such property

having been derived from a specified unlawful activity, that is, wire fraud and mail

fraud, in violation of Title 18, United States Code, Sections 1343 and 1341,

respectively:

| Count | Date | Monetary Transaction |
|---|---|---|
| Twenty-Four | On or about May 24, 2018 | Wire transfer of $10,500 into BBVA account ending in 5730 |
| Twenty-Five | On or between April 16, 2019, and April 19, 2019 | Wire transfer of $17,000 into Chase account ending in 2783 |

In violation of Title 18, United States Code, Section 1957 and 2.

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Twenty-Five of this

Indictment are hereby realleged and incorporated by reference for the purpose of

alleging forfeiture. From his engagement in the violations alleged in Counts One

through Twenty-Two and Twenty-Four through Twenty-Five of this Indictment,

the defendant,

17

**BRIAN BRAINARD WEDGEWORTH,**
a/k/a "DR. BRIAN ANDERSON,"
a/k/a "DR. ANTHONY WATKINS,"
a/k/a "DR. BRIAN ADAMS,"
a/k/a "DR. EDWARD CHEN,"
a/k/a "DR. BRIAN CHRIS,"
a/k/a "DR. CHRIS WILLIAMSON,"
a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON,"
a/k/a "DR. BRIAN EDMONDS,"
a/k/a "DR. BRIAN AMMERSON,"
a/k/a "DR. BRIAN LAMAR WILSON,"
a/k/a "DR. BRIAN WILSON,"
a/k/a "DR. BRIAN MIMS,"
a/k/a "DR. BRIAN LAMAR SIMS,"

shall forfeit to the United States:

(A)     pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Sections 1343 and 1341, as alleged in Counts One through Twenty-Two of this Indictment, any and all of the Defendant's right, title, and interest in any property, real and personal, constituting and derived from proceeds traceable to such offenses;

(B)     pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1957, as alleged in Counts Twenty-Four through Twenty-Five of this indictment, any and all of the Defendant's right, title, and interest in any property, real and personal, involved in such offenses, and any property traceable to such property.

18

The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which: 1) constitutes or is derived from proceeds traceable to these offenses, and 2) is involved in such offenses and any property traceable to such property. The property subject to forfeiture includes, but is not limited to, the following:

1.      Two-tone woman's Oyster Perpetual Rolex watch (S/N S675U887).

2.      $9,742.60 and any applicable interest accrued since October 28, 2020, held in the T.D. Ameritrade account ending in 2283, held in the name of the defendant,

**BRIAN BRAINARD WEDGEWORTH,**
**a/k/a "DR. BRIAN ANDERSON,"**
**a/k/a "DR. ANTHONY WATKINS,"**
**a/k/a "DR. BRIAN ADAMS,"**
**a/k/a "DR. EDWARD CHEN,"**
**a/k/a "DR. BRIAN CHRIS,"**
**a/k/a "DR. CHRIS WILLIAMSON,"**
**a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON,"**
**a/k/a "DR. BRIAN EDMONDS,"**
**a/k/a "DR. BRIAN AMMERSON,"**
**a/k/a "DR. BRIAN LAMAR WILSON,"**
**a/k/a "DR. BRIAN WILSON,"**
**a/k/a "DR. BRIAN MIMS,"**
**a/k/a "DR. BRIAN LAMAR SIMS."**

3.      $84,126.63 and any applicable interest accrued since June 17, 2021, held in the Bank of America, N.A. account ending in 5468, held in the name of the defendant,

**BRIAN BRAINARD WEDGEWORTH,**
a/k/a **"DR. BRIAN ANDERSON,"**
a/k/a **"DR. ANTHONY WATKINS,"**
a/k/a **"DR. BRIAN ADAMS,"**
a/k/a **"DR. EDWARD CHEN,"**
a/k/a **"DR. BRIAN CHRIS,"**
a/k/a **"DR. CHRIS WILLIAMSON,"**
a/k/a **"DR. BRIAN CHRISTOPHER WILLIAMSON,"**
a/k/a **"DR. BRIAN EDMONDS,"**
a/k/a **"DR. BRIAN AMMERSON,"**
a/k/a **"DR. BRIAN LAMAR WILSON"**
a/k/a **"DR. BRIAN WILSON,"**
a/k/a **"DR. BRIAN MIMS,"**
a/k/a **"DR. BRIAN LAMAR SIMS."**

4.  $5,278.51 and any applicable interest accrued since July 14, 2021, in

the U.S. Bank account ending in 3274, held in the name of the defendant,

**BRIAN BRAINARD WEDGEWORTH,**
a/k/a **"DR. BRIAN ANDERSON,"**
a/k/a **"DR. ANTHONY WATKINS,"**
a/k/a **"DR. BRIAN ADAMS,"**
a/k/a **"DR. EDWARD CHEN,"**
a/k/a **"DR. BRIAN CHRIS,"**
a/k/a **"DR. CHRIS WILLIAMSON,"**
a/k/a **"DR. BRIAN CHRISTOPHER WILLIAMSON,"**
a/k/a **"DR. BRIAN EDMONDS,"**
a/k/a **"DR. BRIAN AMMERSON,"**
a/k/a **"DR. BRIAN LAMAR WILSON,"**
a/k/a **"DR. BRIAN WILSON,"**
a/k/a **"DR. BRIAN MIMS,"**
a/k/a **"DR. BRIAN LAMAR SIMS."**

5.  $567.08 and any applicable interest accrued since October 18, 2021,

in the Woodforest National Bank account ending in 5181, held in the name of the

defendant,

BRIAN BRAINARD WEDGEWORTH,
a/k/a "DR. BRIAN ANDERSON,"
a/k/a "DR. ANTHONY WATKINS,"
a/k/a "DR. BRIAN ADAMS,"
a/k/a "DR. EDWARD CHEN,"
a/k/a "DR. BRIAN CHRIS,"
a/k/a "DR. CHRIS WILLIAMSON,"
a/k/a "DR. BRIAN CHRISTOPHER WILLIAMSON,"
a/k/a "DR. BRIAN EDMONDS,"
a/k/a "DR. BRIAN AMMERSON,"
a/k/a "DR. BRIAN LAMAR WILSON,"
a/k/a "DR. BRIAN WILSON,"
a/k/a "DR. BRIAN MIMS,"
a/k/a "DR. BRIAN LAMAR SIMS."

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendant:

i.     cannot be located upon the exercise of due diligence;

ii.    has been transferred, sold to, or deposited with a third party;

iii.   has been placed beyond the jurisdiction of this Court;

iv.   has been substantially diminished in value; or

v.    has been commingled with other property that cannot be

        subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c),

to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:

███████████████████

FOREPERSON

_Oct 26, 2021_
DATE

JASON R. COODY
Acting United States Attorney

JUSTIN M. KEEN
Assistant United States Attorney